Dan Lawton (State Bar No. 127342)
Joseph C. Kracht (State Bar No. 228507)
LAWTON LAW FIRM
Emerald Plaza
402 West Broadway, Suite 1860
San Diego, CA  92101
dlawton@lawtonlaw.com (Electronic mail)
(619) 595-1370 (Telephone)
(619) 595-1520 (Facsimile)

Attorneys for Plaintiff and Counterdefendant AntiCancer, Inc.

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>v.<br><br>FUJIFILM MEDICAL SYSTEMS U.S.A., INC., d/b/a FUJIFILM LIFE SCIENCE, a New York corporation; FUJIFILM CORPORATION, a Japanese corporation; GE HEALTHCARE INC., a Delaware corporation;  and DOES 1-100,<br><br>　　　　Defendants.<br>_____<br>FUJIFILM MEDICAL SYSTEMS U.S.A., INC., d/b/a FUJIFILM LIFE SCIENCE, a New York corporation; FUJIFILM CORPORATION, a Japanese corporation,<br><br>　　　　Counterclaimants,<br><br>v.<br><br>ANTICANCER, INC.,<br><br>　　　　Counterdefendant.<br>_____ | Case No. 3:09-CV-01311-WQH-JMA<br><br>PLAINTIFF AND COUNTERDEFENDANT ANTICANCER, INC.'S SECOND AMENDED COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTIONS FOR INFRINGEMENT OF U.S. PATENTS NOS. 6,251,384, 6,649,159, AND 6,759,038; DEMAND FOR TRIAL BY JURY AND FOR SPEEDY HEARING<br><br>JURY TRIAL DEMANDED<br><br>Honorable William Q. Hayes<br>United States District Court Judge |

Pursuant to Fed. R. Civ. P. 15(a)(1), plaintiff and counterdefendant AntiCancer, Inc. ("AntiCancer") alleges as follows:

## JURISDICTION AND VENUE

1. This action for patent infringement arises under the patent laws of the United States, Title 35 of the United States Code, and under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

2. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 2201.

3. Venue is proper in this judicial district under pertinent law, including, *inter alia*, 28 U.S.C. §§ 1391(b), (c).

## THE PARTIES

4. Plaintiff is a corporation organized and existing under the laws of the State of California and having as its principal place of business San Diego, California. Via years of research and innovation (and large investments of time, capital, and effort by its scientists and researchers), AntiCancer has developed patented techniques which allow researchers to

- track metastasis of tumor cells in live lab animals through the use of fluorescent proteins, including green fluorescent protein ("GFP"), a protein which occurs naturally in a species of jellyfish, *Aequorea victoria* (known as the crystal jelly);
- do whole-body external optical imaging of gene expression in live animals; and
- evaluate candidate protocols or drugs for treating disease using fluorophores, i.e., proteins which self-fluoresce (so that no other factor is needed to cause it to glow).

5. GFP is understood by those skilled in the art to mean a protein which fluoresces green or any other color and includes fluorophores such as RFP and/or DsRed.

6. AntiCancer engineers tumor cells encoded with GFP and other fluorophores, which glow when excited by blue light. Afterward, AntiCancer implants the tumor cells into laboratory animals (such as live mice) via such means as subcutaneous injection and surgical orthotopic implantation. When the cells fluoresce, they glow green (or other colors, depending on the fluorescent protein used), enabling scientists to track their growth and

spread in the living animal in real time by fluorescence imaging (or afterward under a microscope).   These methods are highly useful to researchers seeking to learn whether a given drug or treatment regimen is slowing, stopping, or having no effect on the tumor cells being looked at.  The National Cancer Institute (the United States government's principal agency for cancer research, and administrator of the Small Business Innovation Research and Small Business Technology Transfer programs) has recognized AntiCancer's success by, *inter alia*, awarding AntiCancer multiple Phase I and Phase II SBIR grants and contracts to help advance cancer research technologies.  These have included three research tools: MetaMouse, AngioMouse, and OncoBrite.  NCI has recognized AntiCancer in its print publications as "a leader in small-animal imaging technology and mouse models" and the developer of "leading mouse models for cancer research . . ."  In these same publications NCI has noted that AntiCancer's mouse models "are now used in contract research with pharmaceutical and biotechnology companies to support novel cancer drug discovery and evaluation."

       7.     The discoverer of GFP, Osamu Shimomura of Boston University and two of the scientists who developed its initial applications, Roger Tsien of UCSD and Martin Chalfie of Columbia University, recently won the Nobel Prize for chemistry (awarded in 2008).  In announcing the award of the Nobel Prize, the Nobel committee cited AntiCancer's inventions of using GFP to watch cancer cells spread by stating:

> The remarkable brightly glowing green fluorescent protein, GFP, was first observed in the beautiful jellyfish, *Aequorea victoria*, in 1962.  Since then, this protein has become one of the most important tools used in contemporary bioscience.  With the aid of GFP, researchers have developed ways to watch processes that were previously invisible, such as the development of nerve cells in the brain **or how cancer cells spread**.

(Emphasis added.)

       8.     Defendant Fujifilm Medical Systems U.S.A., Inc. is a corporation organized and existing under the laws of the State of New York and having as its principal places of business various locations, including without limitation Stamford, Connecticut.  It does business as Fujifilm Life Science, a division of Fujifilm Medical Systems.  It is a leading

provider of medical image and information products and technologies for acquiring, processing, presenting, managing, and storing diagnostic images. It is a wholly-owned subsidiary of defendant Fujifilm Corp. (described further hereinbelow).

9. Defendant Fujifilm Corporation is a corporation organized and existing under the laws of Japan and having as its principal places of business various locations, including without limitation Tokyo, Japan. Fujifilm Corporation is the world's largest photographic and imaging company. It is a wholly-owned subsidiary of Fujifilm Holding Corporation. For ease of reference, Defendants Fujifilm Medical Systems, U.S.A., Inc., and Fujifilm Corporation are sometimes referred to collectively hereinafter as "Fujifilm."

10. Defendant GE Healthcare Inc. ("GE Healthcare") is a corporation organized and existing under the laws of the State of Delaware and having as its principal place of business various places, including without limitation Princeton, NJ, and Piscataway, NJ. GE Healthcare provides medical technologies and services, with special expertise in medical imaging and informational technologies and drug discoveries. The stock of GE Healthcare is owned by General Electric Company. One of GE Healthcare's key care areas is oncology, of which its molecular imaging business is the forefront. GE Healthcare's molecular imaging business enables physicians to "peer into the living body in [sic] to identify diseases, monitor their progression, and treat medical conditions at a molecular level." (Http://gehealthcare.com/usen/about/ge_factsheet.html.) GE Healthcare offers an "array of imaging solutions for use in pre-clinical research for drug development and related applications to deliver complete solutions for Molecular Imaging research." *Id*.

11. The true names and capacities, whether individual, corporate, associate, representative or otherwise, of DOES 1 through 100, inclusive, are unknown to plaintiff, who therefore sues them by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacities of said defendants when they are ascertained. Plaintiff is informed and believes, and thereupon alleges, that each of the defendants named as a Doe, along with the named defendants, is responsible in some manner for the occurrences herein alleged, and that plaintiff's injuries herein alleged were legally or

1  proximately caused by said defendants.  Wherever it is alleged that any act or omission was
2  also done or committed by any specifically named defendant, or by defendants generally,
3  plaintiff intends thereby to allege, and does allege, that the same act or omission was also
4  done and committed by each and every defendant named as a Doe, and each named
5  defendant, both separately and in concert or conspiracy with the named defendants.  Many
6  defendants named as Does are Fujifilm and/or GE Healthcare customers who have purchased
7  (and/or who will purchase) Fujifilm and/or GE Healthcare image analyzers (as defined
8  further hereinbelow at ¶ 35 and ¶ 38).

9  12.  At all times mentioned herein, defendants, and each of them, were the agents,
10 servants, co-conspirators, or employees of one another, and the acts and omissions herein
11 alleged were done or suffered by them, acting individually and through or by their alleged
12 capacity, within the scope of their authority.  Each of the defendants aided and abetted and
13 rendered substantial assistance in the accomplishment of the acts complained of herein.  In
14 taking the actions, as particularized herein, to aid and abet and substantially assist in the
15 commission of the misconduct complained of, each defendant acted with an awareness of his,
16 her or its primary wrongdoing and realized that his, her or its conduct would substantially
17 assist in the accomplishment of that misconduct and was aware of his, her or its overall
18 contribution to, and furtherance of the conspiracy, common enterprise, and common course
19 of conduct.  Defendants' acts of aiding and abetting included, *inter alia*, all of the acts each
20 defendant is alleged to have committed in furtherance of the conspiracy, common enterprise,
21 and common course of conduct complained of herein.

THE PATENTS-IN-SUIT

23 13.  <u>'384 patent</u>.  Metastasis constitutes a major portion of the life-threatening
24 aspects of cancer.  Metastasis is the spread of cancer in the body.  It includes the growth of
25 secondary tumors at sites different from the primary tumor.  Metastasis can defy surgical
26 removal of the primary tumor and make it impossible to arrest cancer's spread.  In order to
27 understand metastasis, a real-time model which permits identification of small numbers of
28 tumor cells against a background of many host cells (so that secondary tumor emboli and

micrometastases can be observed over the course of real time) is needed.

14. AntiCancer's methods claimed in the '384 patent (Ex. 9 hereto) provide a real-time model of tumor invasion and metastasis formation. The method enables testing of candidate protocols or drugs in animal models before they are tried in the clinic. The methods of the invention can be applied not only to mouse models of tumor growth and metastasis, but, through the use of retroviral vectors, can in the future be employed to obtain clinical data in human subjects bearing tumors.

15. Key terms in the '384 patent include GFP, i.e. green fluorescent protein. The '384 patent defines GFP as a fluorescent protein of any color. For example, the specification of the '384 patent teaches:

> By suitable modification, the spectrum of light emitted by the GFP can be altered. Thus, although the term "GFP" is used in the present application, the proteins included within this definition are not necessarily green in appearance. Various forms of GFP exhibit colors other than green and these, too, are included within the definition of "GFP" and are useful in the methods and materials of the invention. In addition, it is noted that green fluorescent proteins falling within the definition of "GFP" herein have been isolated from other organisms, such as the sea pansy, *Renilla reriformis*. Any suitable and convenient form of the GFP gene can be used to modify the tumor cells useful in the models of the invention, and for retroviral transformation of endogenous tumors.

16. The '384 patent claims methods for (1) evaluating candidate protocols or drugs for inhibiting metastasis of primary tumors via methods including administering that protocol or drug to a mammalian subject containing a primary tumor that expresses GFP when the tumor metastasizes, then (2) monitoring the progression of the metastasis *in vivo* by observing the fluorescence at various locations in the animal by fluorescence optical tumor imaging ("FOTI"). Also included are methods for excising fresh organ tissues from the animal and putting those tissues under a fluorescence microscope to view the GFP-expressing cancer cells.

17. The priority date of the '384 patent is March 27, 1998.

18. <u>'038 patent</u>. The '038 patent (Ex. 8 hereto) relates to the study of tumor progression. Specifically, it concerns model systems for studying tumor metastasis in

vertebrates and evaluating candidate drugs for treating the tumors. It claims methods for following metastasis by looking at GFP-expressing tumor cells in vertebrate animal organ tissues. It shares the same specification as the '384 patent.

19. The priority date of the '038 patent is March 27, 1998.

20. <u>'159 patent</u>. The '159 patent (Ex. 10 hereto) relates to the whole-body external optical imaging of gene expression. It claims methods for such imaging (as well as methods for evaluating candidate protocols or drugs for treating disease) using fluorophores linked to the endogenous promoters of genes. These methods offer simple, noninvasive, highly selective and real-time means for recording and analyzing gene expression in animals. The '159 patent does not limit the methods by which the images produced by fluorescence optical tumor imaging can be monitored or captured. Instead, any suitable methods are encompassed by the claims of the '159 patent. For example, Example 1 to the specification of the '159 patent provides that high resolution images can be captured by computer, or continuously through video output onto videotape. The '159 patent's more limited definition of GFP is in contrast to the definitions set forth in the patent family that includes the '384 and '038 patents (where the term GFP is explicitly defined to include all colors, not just green). However, the claims use the term "fluorophore," which can include any color (not just green). Claim 5 of the '159 patent identifies as a claim limitation that the fluorophore used be selected from a group of fluorescent proteins consisting of GFP, BFP (blue fluorescent protein), and RFP (red fluorescent protein).

21. The priority date of the '159 patent is March 17, 2000.

22. AntiCancer licenses its patented methods to others – both commercial users (such as pharmaceutical companies) and non-commercial users (such as universities).

23. When a user uses AntiCancer's methods to image GFP-expressing tumor cells in an intact lab animal, it infringes AntiCancer's patents (unless done pursuant to a license with AntiCancer).

///

///

**DEFENDANTS' WRONGFUL COURSE OF CONDUCT**

24. On May 15, 2007, Fujifilm Life Science Regional Manager Stephanie Pappas wrote an e-mail to Dr. Robert Hoffman, President of AntiCancer. In the e-mail, she wrote that she "under[stood] that [AntiCancer] [was] interested in discussing in-vivo imaging of small animals." She invited Dr. Hoffman to meet or have a phone conversation with her. (Ex. 1.)

25. A few days later, on May 18, 2007, AntiCancer Vice President and Chief Operating Officer Charlene Cooper set up a meeting between Ms. Pappas and Dr. Hoffman to take place on May 30, 2007. (Ex. 2.)

26. During the meeting on May 30, Ms. Pappas and Dr. Hoffman discussed *in vivo* imaging using GFP, and the capability of Fujifilm's new LAS-4000 multi color fluorescence imaging system to do such imaging. The LAS-4000 is an imaging system combining CCD camera technology with a simplified user interface. Using interchangeable light sources, a filter turret, and an imaging chip, the LAS-4000 permits imaging of tumor cells and gene expression in live laboratory animals using GFP. The LAS-4000 is one of the industry's fastest and most sensitive imaging systems with a linear dynamic range over four orders of magnitude. After their meeting, Ms. Pappas was excited and hopeful at the prospect of Fujifilm working with AntiCancer. She told Dr. Hoffman that she would begin to take steps to get the two companies working together and for Fujifilm to obtain a license from AntiCancer so it could market the LAS-4000 specifically for *in vivo* imaging using GFP.

27. On June 27, 2007, Dr. Hoffman and Ms. Pappas had a follow-up phone conversation. In this conversation, Ms. Pappas told Dr. Hoffman that Fujifilm was releasing the LAS-4000 to the U.S. market soon, but that Fujifilm was unable to advertise the LAS-4000 for GFP-based *in vivo* imaging because of "patents" and "lawsuits." She said that she was getting phone calls about *in vivo* imaging from potential customers every day, but that her "hands were tied" when it came to talking about or selling the LAS-4000 for GFP-based *in vivo* imaging.

28. On August 28, 2007, Ms. Pappas wrote another e-mail to AntiCancer, asking if

1   AntiCancer was interested in a product demonstration of the Fujifilm LAS-4000.  AntiCancer
2   responded affirmatively and Ms. Cooper and Ms. Pappas scheduled the demo for September
3   13 and 14 at AntiCancer's facility.  (Ex. 3.)  The demo of the LAS-4000 went forward on
4   that date.  It was apparent at that time that the LAS-4000 was capable of fluorescent imaging
5   with GFP, and in fact produced a very good result.
6       29.     Following the successful demo, AntiCancer and Fujifilm scheduled a "Mini
7   Product Show" for early December, 2007.  (Ex. 4.)  AntiCancer and Fujifilm invited several
8   vendors each to the show, where the LAS-4000 was demonstrated once more at AntiCancer's
9   facility.
10      30.     Although Ms. Pappas appeared eager to enter into licensing negotiations with
11  AntiCancer, she had difficulty contacting whomever was responsible for licensing at
12  Fujifilm.  She e-mailed AntiCancer on December 11, 2007, with the name of a woman
13  "involved in Marketing for the Imaging Systems in Japan," Yoko Kawabata.  Ms. Pappas
14  wrote that Ms. Kawabata would be able to "give Dr. Hoffman a lead for a senior person" to
15  speak with about Fujifilm obtaining a license from AntiCancer to practice its patents and
16  advertise the LAS-4000 for GFP-based *in vivo* imaging.  (Ex. 5.)  AntiCancer had no contact
17  with Ms. Pappas after that date.
18      31.     The last contact with Fujifilm was on January 24, 2008.  On that date, Ellen
19  Calleja from Fujifilm contacted Dr. Hoffman.  She told him she would try to find out who the
20  decision maker is regarding licenses for Fujifilm, and then get back to him.  AntiCancer did
21  not hear back from Ms. Calleja or anyone else at Fujifilm about obtaining a license.  On
22  information and belief, Fujifilm used the information obtained from AntiCancer under the
23  pretense of seeking a collaboration with AntiCancer for the sole purpose of gaining an
24  advantage in the marketing of its LAS-4000 for GFP-based *in vivo* imaging, and had no true
25  intention of a collaboration with AntiCancer at all.
26      32.     In May 2008, Fujifilm published "Application Note No. 6," entitled In Vivo
27  Imaging of Tumor-Bearing Nude Mouse with DY-676 Labeled Monoclonal Antibody Using
28  Near-Infrared Light."  This paper included data, conclusions, and photographs provided by

Perseus Proteomics Inc. of Tokyo, Japan. Its subject was reporting the results of usage of an LAS-4000 IR multi color fluorescence imaging system for detection of targeted fluorescence in a tumor-bearing nude mouse model." This paper proved both the suitability of the LAS-4000 for performing the methods claimed in several claims of the patents-in-suit and Fujifilm's attempt to induce actual and potential customers to use the LAS-4000 for that very purpose.

33. In the meantime, Fujifilm has been marketing the LAS-4000 for sale in the United States. Its marketing materials state that the LAS-4000 can be "customized for detection methods selected from chemi/bioluminescence detection and a wide range of fluorescence detection by various light sources." (Ex. 6, p. 2.) To this end, Fujifilm's LAS-4000 materials clearly list the proper filter and reagents to use for imaging with GFP. The materials also contain a general, boilerplate notice to its customers regarding use of the LAS-4000 and potential patent liability, advising its customers to "consult with a lawyer or patent attorney about obtaining a license from the third parties." (Ex. 6, p.6.)

34. One print advertisement for the LAS-4000, appearing in the March 2009 issue of Bioscience Technology, touts the capability of the LAS-4000 to do fluorescent imaging as well as "small animal *in vivo* imaging." (Ex. 7.) Fujifilm is actively encouraging its actual and prospective customers to practice methods claimed in AntiCancer's patents in the United States by using the LAS-4000 for GFP-based *in vivo* imaging, without AntiCancer's consent. Fujifilm has sold scores of the LAS-4000 to its customers in the United States, and is continuing to do so.

35. In addition, Fujifilm has made, used, sold, and offered for sale in the United States other devices which can be and are being used by Fujifilm's customers to practice methods claimed in AntiCancer's patents. These include, *inter alia*, Fujifilm's LAS-1000 luminescent image analyzer, LAS-1000plus, LAS-3000 luminescent image analyzer, FLA-5100 fluorescent image analyzer, and FLA-8000 fluorescent image analyzer (all image analyzers capable of *in vivo* fluorescent imaging with GFP), together with "mini" versions of each of the LAS-labeled devices. Collectively these devices and the LAS-4000 are referred

1  to sometimes hereinbelow as the "Fujifilm image analyzers." Fujifilm openly advertises the
2  fluorescent imaging capabilities of the Fujifilm image analyzers in direct marketing pieces
3  and on its website. It provides its customers with detailed user manuals which provide filter
4  settings and lens configurations necessary to use Fujifilm image analyzers to do fluorescent
5  imaging. In so doing, Fujifilm actively has induced and (unless enjoined by the Court) will
6  continue to induce infringement of AntiCancer's patents by knowingly causing its customers
7  to infringe those patents directly by using the Fujifilm image analyzers to perform methods
8  claimed in those patents.

9       36.   On May 26, 2009, Fujifilm and GE Healthcare announced the formation of a
10 "strategic alliance" in life sciences and a "global alliance in biomolecular imaging." Per
11 these alliances, Fujifilm will act as an original equipment manufacturer (OEM) in
12 developing, manufacturing, and selling to GE Healthcare, Fujifilm image analyzers, to be re-
13 sold by GE Healthcare to GE Healthcare's customers in the United States and elsewhere
14 under the GE brand in "life science research and drug discovery markets."

15      37.   On October 1, 2009, GE Healthcare began offering for sale a line of imaging
16 products capable of infringing the patents-in-suit. (Ex. 11.)

17      38.   GE Healthcare's website is now prominently marketing products called
18 "ImageQuant LAS 4000" and "ImageQuant LAS 4000mini." (Exhibits 12 and 13.) The
19 technical specifications for these products, together with Fujifilm's announcement that
20 "products equivalent" to the LAS-4000 and LAS-4000mini are now offered "[u]nder a
21 strategic alliance with GE Healthcare," indicate that the ImageQuant LAS 4000 and
22 ImageQuant LAS 4000mini are the same products. On information and belief, GE
23 Healthcare is marketing, selling, and offering for sale the Fujifilm image analyzers, and
24 instructing its customers how to use the Fujifilm image analyzers so as to infringe the
25 patents-in-suit.
26 ///
27 ///
28 ///

FIRST CLAIM FOR RELIEF

(For Infringement of '038 Patent)

(Against all Defendants)

40. Plaintiff realleges and incorporates by reference as though fully set forth preceding paragraphs 1 through 39.

41. The '038 Patent issued on July 6, 2004. A true and correct copy of the '038 Patent is attached hereto as Exhibit 8 and incorporated herein by this reference.

42. Plaintiff is the sole owner of the '038 Patent.

43. Plaintiff is informed and believes that defendants have infringed, and still are infringing, the '038 patent by making, using, selling, and offering for sale the Fujifilm and/or GE Healthcare image analyzers, i.e., devices which can and are be used to infringe one or more claims of the '038 Patent by defendants' customers without plaintiff's authorization or consent. These devices include the Fujifilm and GE Healthcare image analyzers as described hereinabove.

44. Plaintiff is informed and believes that defendants have infringed the '038 Patent and encouraged others to do so, and will continue to do so unless enjoined by this Court.

45. Plaintiff is informed and believes, and on that basis, alleges that defendants are aware of the '038 Patent and that its infringement has been willful.

46. Plaintiff is informed and believes that defendants are actively inducing and/or contributing to infringement of the '038 Patent by others, all of whom are sued herein as Does 1 through 100. Plaintiff will seek leave to amend this complaint to show the true names and capacities of said defendants when they are ascertained.

47. By reason of the foregoing, plaintiff has suffered damages in an amount to be proven at trial and, in addition, has suffered irreparable loss and injury.

48. The acts of infringement described above are willful, deliberate and in reckless disregard of plaintiff's patent rights.

///

| | |
|---|---|
|1| SECOND CLAIM FOR RELIEF |
|2| (For Infringement of '384 Patent) |
|3| (Against all Defendants) |

4    49.    Plaintiff realleges and incorporates by reference as though fully set forth
5 preceding paragraphs 1 through 48.

6    50.    The '384 Patent issued on June 26, 2001.  A true and correct copy of the '384
7 Patent is attached hereto as Exhibit 9 and incorporated herein by this reference.

8    51.    Plaintiff is the sole owner of the '384 Patent.

9    52.    Plaintiff is informed and believes that defendants have infringed, and still are
10 infringing, the '384 patent by making, using, selling, and offering for sale the Fujifilm and/or
11 GE Healthcare analyzers, i.e., devices which can and are be used to infringe one or more
12 claims of the '038 Patent by defendants' customers without plaintiff's authorization or
13 consent.  These devices include the Fujifilm and GE Healthcare image analyzers as described
14 hereinabove.

15    53.    Plaintiff is informed and believes that defendants have infringed the '384
16 Patent and encouraged others to do so, and will continue to do so unless enjoined by this
17 Court.

18    54.    Plaintiff is informed and believes, and on that basis, alleges that defendants are
19 aware of the '384 Patent and that its infringement has been willful.

20    55.    Plaintiff is informed and believes that defendants are actively inducing and/or
21 contributing to infringement of the '384 Patent by others, all of whom are sued herein as
22 Does 1 through 100.  Plaintiff will seek leave to amend this complaint to show the true names
23 and capacities of said defendants when they are ascertained.

24    56.    By reason of the foregoing, plaintiff has suffered damages in an amount to be
25 proven at trial and, in addition, has suffered irreparable loss and injury.

26    57.    The acts of infringement described above are willful, deliberate and in reckless
27 disregard of plaintiff's patent rights.

28 ///

## THIRD CLAIM FOR RELIEF

(Infringement of '159 Patent)

(Against all Defendants)

58. Plaintiff realleges and incorporates by reference as though fully set forth preceding paragraphs 1 through 57.

59. The '159 Patent issued on November 18, 2003. A true and correct copy of the '159 Patent is attached hereto as Exhibit 10 and incorporated herein by this reference.

60. Plaintiff is the sole owner of the '159 Patent.

61. Plaintiff is informed and believes that defendants have infringed, and still are infringing, the '159 patent by making, using, selling, and offering for sale the Fujifilm and/or GE Healthcare image analyzers, i.e., devices which can and are be used to infringe one or more claims of the '159 Patent by defendants' customers without plaintiff's authorization or consent. These devices include the Fujifilm and GE Healthcare image analyzers as described hereinabove.

62. Plaintiff is informed and believes that defendants have infringed the '159 Patent and encouraged others to do so, and will continue to do so unless enjoined by this Court.

63. Plaintiff is informed and believes, and on that basis, alleges that defendants are aware of the '159 Patent and that its infringement has been willful.

64. Plaintiff is informed and believes that defendants are actively inducing and/or contributing to infringement of the '159 Patent by others, all of whom are sued herein as Does 1 through 100. Plaintiff will seek leave to amend this complaint to show the true names and capacities of said defendants when they are ascertained.

65. By reason of the foregoing, plaintiff has suffered damages in an amount to be proven at trial and, in addition, has suffered irreparable loss and injury.

66. The acts of infringement described above are willful, deliberate and in reckless disregard of plaintiff's patent rights.

///

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff AntiCancer prays for relief as follows:

A.   That defendants, and each of them, be adjudged to have infringed the '159, '384, and/or '038 patent(s), under 35 U.S.C. § 271(a), (b), (c), and (g);

B.   That all defendants, and each of them, be adjudged to have willfully infringed the '159, '384, and/or '038 patent(s) under 35 U.S.C. § 271(a), (b), (c), and (g);

C.   That defendants, and each of them, as well as their respective officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them be preliminarily and permanently restrained and enjoined under 35 U.S.C. § 283 from directly or indirectly infringing the '159, '384, and/or '038 patent(s);

D.   That the Court award damages to compensate AntiCancer for the defendants' infringement of the '159, '384, and '038 patent(s), as well as enhanced damages pursuant to 35 U.S.C. § 284;

E.   That the Court award AntiCancer its attorney's fees pursuant to 35 U.S.C. § 285;

F.   That the Court assess against defendants and in favor of AntiCancer pre-judgment and post-judgment interest and costs of suit; and

G.   That AntiCancer have such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Dated: April 15, 2010                    LAWTON LAW FIRM


By:   /s/Dan Lawton
      Dan Lawton
      Attorney for Plaintiff and Counterdefendant
      AntiCancer, Inc.

DEMAND FOR TRIAL BY JURY AND FOR SPEEDY HEARING

Plaintiff hereby demands a trial by jury as to all issues triable by jury, specifically including, but not limited to, the infringement of United States Patent Nos. 6,251,384, 6,649,159, and 6,759,038. Plaintiff also requests a speedy hearing of its claim for declaratory judgment pursuant to Fed. R. Civ. P. 57.

Respectfully submitted,

Dated: April 15, 2010          LAWTON LAW FIRM


By:   /s/Dan Lawton
      Dan Lawton
      Attorney for Plaintiff and Counterdefendant
      AntiCancer, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing PLAINTIFF AND COUNTERDEFENDANT ANTICANCER, INC.'S SECOND AMENDED COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTIONS FOR INFRINGEMENT OF U.S. PATENTS NOS. 6,251,384, 6,649,159, AND 6,759,038; DEMAND FOR TRIAL BY JURY AND FOR SPEEDY HEARING was this date served upon all counsel of record by electronic transmission through the Case Management/Electronic Case Filing (CM/ECF) system of the U.S. District Court for the Southern District of California, and that all parties in this case are represented by counsel who are CM/ECF participants.

Date: April 15, 2010          By:   /s/Dan Lawton