# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ANTICANCER, INC., a California corporation,<br><br>                            Plaintiff,<br>   vs.<br>FUJIFILM MEDICAL SYSTEMS U.S.A., INC., doing business as Fujifilm Life Science, a New York corporation; FUJIFILM CORPORATION, a Japanese corporation; DOES 1-50; GE HEALTHCARE, INC., a Delaware corporation; DOES 1-100,<br><br>                            Defendant.<br>FUJIFILM MEDICAL SYSTEMS U.S.A., INC.; FUJIFILM CORPORATION,<br><br>                         Counter Claimant<br>   vs.<br>ANTICANCER, INC., a California corporation,<br><br>                        Counter Defendant. | CASE NO. 09cv1311 WQH (JMA)<br><br>**ORDER** |

HAYES, Judge:

    The matter before the Court is GE Healthcare, Inc.'s Motion to Dismiss. (Doc. # 45).

## BACKGROUND

    This action is a patent infringement lawsuit. On June 17, 2009, Plaintiff AntiCancer, Inc. ("AntiCancer") initiated this action by filing its Complaint. (Doc. # 1). On August 20,

2009, AntiCancer filed its First Amended Complaint ("FAC"). (Doc. # 6). On September 9, 2009, Fujifilm Corporation and Fujifilm Medical Systems U.S.A., Inc. (collectively "Fujifilm") filed an answer to the complaint. (Doc. # 9). On October 9, 2009, GE Healthcare, Inc. ("GE") filed a motion to dismiss. (Doc. # 20). On November 16, 2009, AntiCancer filed its Second Amended Complaint ("SAC") along with an opposition to dismiss which contended the SAC was filed as of right and rendered the motion to dismiss moot. (Doc. # 22). On January 19, 2010, the Court struck the SAC from the docket because AntiCancer had not obtained leave of the Court or consent of Defendants prior to filing the SAC and granted GE's motion to dismiss the SAC as unopposed. (Doc. # 36). On April 9, 2010, the Court granted AntiCancer's motion for leave to amend. (Doc. # 43). On April 15, 2010, AntiCancer filed its SAC again, which is the operative pleading in this case. (Doc. # 44). On April 29, 2010, GE filed its Motion to Dismiss. (Doc. # 45).

## ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

AntiCancer holds patents for techniques which allow researchers to track metastasis of tumor cells in live lab animals through the use of

- fluorescent proteins, including green fluorescent protein ("GFP"), a protein which occurs naturally in a species of jellyfish, Aequorea victoria (known as the crystal jelly);
- do whole-body external optical imaging of gene expression in live animals; and
- evaluate candidate protocols or drugs for treating disease using fluorophores, i.e., proteins which self-fluoresce (so that no other factor is needed to cause it to glow).

(Doc. # 44 at 1). AntiCancer can "encode tumor cells with GFP and other fluorophores which glow" when exposed to blue light. *Id.* AntiCancer then injects the tumor cells into animals which allows scientists to monitor the tumors' "growth and spread in the living animal . . . by fluorescence imaging." *Id.* at 1-2. This allows researchers to test the efficacy of cancer treatments. *Id.* at 2.

There are three patents at issue in this case. First, the '384 patent is a patent for methods of

> provid[ing] a real-time model of tumor invasion and mestasis formation. The method enables testing of candidate protocols or drugs in animal models before they are tried in the clinic. The methods of the invention can be applied not only to mouse models of tumor growth and metastasis, but, through the use of retroviral vectors, can in the future be employed to obtain clinical data in human subjects bearing tumors.

*Id.* at 5. One of the key terms in the patent is "GFP" or green fluorescent protein. *Id.* Despite the name, GFP is defined as a fluorescent protein of any color. *Id.* The '384 patent claims a method for testing cancer drugs by administering them to mammals with primary tumors which "express[]" the GFP when the cancer metastasizes and monitoring the progress of the metastasises via fluorescence optical tumor imaging ("FOTI"). *Id.* The patent also covers a process of removing organ tissue samples containing GFP-expressing cancer cells and examining them under a fluorescence microscope. The priority date of the '384 patent is March 27, 1998. *Id.*

Second, the '038 patent is a patent for methods of tracking metasis of GFP-expressing cancer in the organ tissue of vertebrates. *Id.* at 5-6. The priority date of the '038 patent is also March 27, 1998. *Id.* at 6.

Third, the '159 patent is a patent for "any suitable methods" of whole-body noninvasive imaging of animals with cancer cells containing fluorophores. *Id.* The fluorophores are limited to GFP (which in this patent is limited to fluorescent protein that is actually green in color), blue fluorescent protein ("BFP"), and red fluorescent protein ("RFP"). *Id.* The priority date of the '159 patent is March 17, 2000. *Id.*

AntiCancer licenses these three patents. *Id.* On May 30, 2007, an employee of Fujifilm, Stephanie Pappas and the president of AntiCancer, Robert Hoffman met to discuss "in-vivo imaging of small animals." *Id.* at 7. Pappas and Hoffman discussed an imaging system Fujifilm had created called the LAS-4000 which "is one of the industry's fastest and most sensitive imaging systems" for viewing GFP-tumors in live laboratory animals. *Id.* Pappas told Hoffman she wanted to pursue a business relationship which would involve licensing AntiCancer's patents to allow Fujifilm to "market the LAS-4000 specifically for *in vivo* imaging using GFP." *Id.* On June 27, 2008, Pappas told Hoffman that Fujifilm intended

to release the LAS-4000 in the United States and stated that she was receiving calls from possible buyers about *in vivo* GFP-imaging. *Id.* However, Pappas said "her 'hands were tied' when it came to talking about or selling the LAS-4000 for GFP-based *in vivo* imaging." *Id.*

On August 28, 2007, Pappas emailed Hoffman again to inquire as to whether AntiCancer would be interested in a demonstration of the LAS-4000. *Id.* at 7-8. Hoffman agreed. *Id.* A demonstration was conducted at AntiCancer's facility on September 14 and 15, 2007. *Id.* at 8. In December of 2007, AntiCancer and Fujifilm jointly demonstrated the LAS-4000 for vendors at a "Mini Product Show" at AntiCancer's facility. *Id.*

Pappas "appeared eager to enter into licensing negotiations with AntiCancer," however, "she had difficulty contacting whomever was responsible for licensing at Fujifilm." *Id.* On January 24, 2008, another employee of Fujifilm, Ellen Calleja, contacted Hoffman. *Id.* Calleja told Hoffman that "she would try to find out who the decision maker is regarding licenses for Fujifilm, and then get back to him." *Id.* After that, Hoffman had no further contact with Fujifilm. *Id.* "On information and belief, Fujifilm used the information obtained from AntiCancer under the pretense of seeking a collaboration with AntiCancer for the sole purpose of gaining an advantage in the marketing of its LAS-4000 for GFP-based *in vivo* imaging . . . ." *Id.*

In May of 2008, Fujufilm published a paper on the results of using "an LAS-4000 IR multi color fluorescence imaging system for detection of targeted fluorescence in a tumor-bearing nude mouse model." *Id.* at 8-9. This paper was an "attempt to induce actual and potential customers to use the LAS-4000" to infringe on AntiCancer's patents. *Id.* at 9. Fujifilm's marketing materials for the LAS-4000 used within the United States state that the device "can be 'customized for detection methods selected from chemi/bioluminescence detection and a wide range of fluorescence detection by various light sources." *Id.* These materials also explain what "filter and reagents to use for an image with GFP." *Id.* A "boilerplate notice" warns customers to consult a patent attorney about third-party licensing. *Id.* In March of 2009, Fujifilm published an advertisement in Bioscience Technology which states the LAS-4000 is capable of fluorescent imaging and "small animal *in vivo* imaging."

*Id.* Fujifilm has also sold other imaging devices in the United States which are capable of infringing the patents. *Id.* These devices include the LAS-1000, LAS-1000 plus, and LAS-3000 luminescent image analyzers, "mini" versions of each LAS analyzer, and the FLA-5100 and FLA-8000 fluorescent image analyzers. *Id.* As with the LAS-4000, Fujifilm "openly advertises" the abilities of these image analyzers to infringe AntiCancer's patents and provides consumers with instructions on how to use the image analyzers to infringe AntiCancer's patents. *Id.*

On May 26, 2009, Fujifilm and GE announced that they were forming a "strategic alliance" in biomolecular imaging. *Id.* at 10. On October 1, 2009, GE started selling image analyzers which are capable of infringing AntiCancer's patents. *Id.* GE is now advertising products called the "ImageQuant LAS 4000" and a mini version of that device which are the same product as the prior LAS-4000 offered by Fujifilm. *Id.* GE is instructing its customers on how to use these image analyzers to infringe AntiCancer's patents. *Id.*

AntiCancer alleges claims for infringement of each of its three patents against Fujifilm and GE. *Id.* at 11-13. AntiCancer alleges Fujifilm and GE are infringing each patent "by making, using, selling, and offering for sale" these image analyzers. *Id.* AntiCancer alleges it has not consented to Fujifilm and GE's actions. *Id.* AntiCancer alleges Fujifilm and GE are willfully, deliberately, and recklessly infringing upon the patents. *Id.*

AntiCancer has attached emails between Fujifilm employees and AntiCancer's president, marketing materials for the LAS-4000, the three patents, an announcement from Fujifilm's website stating the LAS-4000 and LAS-4000 mini are now available from GE, and marketing materials from GE's website. (Doc. # 44-1, 44-2, 44-3). The marketing materials from GE's website state the ImageQuant LAS 4000, the device which replaced the LAS-4000, "can be upgraded with . . . RGB fluorescence . . . ." (Doc. # 44-3 at 33).

## ANALYSIS

GE contends that the SAC does not contain "facts to support a claim of direct or indirect infringement of the AntiCancer patents by GE . . . ." (Doc. # 45-1 at 2). GE contends AntiCancer has failed to allege sufficient facts to show direct infringement by GE's customers

1  or facts to show that GE induced or contributed to the infringement. *Id.* at 4-5. GE contends
2  AntiCancer must allege facts which show either (1) that GE "knowingly and actively aided and
3  abetted [] direct infringement" and that GE specifically intended to encourage the direct
4  infringement or (2) that GE knew that the image analyzers were especially made to infringe
5  the patents and that they have no substantial non-infringing uses. *Id.*

6  AntiCancer contends this Court should also consider the Preliminary Infringement
7  Contentions as if they were part of the FAC. (Doc. # 51 at 1). AntiCancer contends it has
8  plead that the "analyzers perform the claimed methods," that GE offers them for sale, and that
9  GE's advertisements "offer technical specifications which instruct customers how to use the
10 analyzers so as to infringe AntiCancer's patents," inducing infringement of those patents. *Id.*
11 at 9.  Therefore, AntiCancer contends it has plead a claim for induced or contributory
12 infringement of its patents. *Id.* at 12-14. AntiCancer argues that in the alternative, if this Court
13 grants the motion, AntiCancer should be granted leave to amend. *Id.* at 14-15.

14 AntiCancer requests judicial notice of its Preliminary Infringement Contentions, which
15 it contends are judicially noticeable as "facts not subject to reasonable dispute and capable of
16 accurate and ready determination . . . ." (Doc. # 51-1). GE contends that "[i]nfringement
17 contentions, by their very nature, are a one-sided presentation of the evidence." (Doc. # 55 at
18 5). GE states that it disputes the evidence in the infringement contentions. *Id.*

19 "A motion to dismiss for failure to state a claim upon which relief can be granted is a
20 purely procedural question not pertaining to patent law." *McZeal v. Sprint Nextel Corp.*, 501
21 F.3d 1354, 1355-56 (Fed. Cir. 2007). Therefore, this Court follows Ninth Circuit procedural
22 law in analyzing whether a complaint should be dismissed for failure to state a claim. *See id.*

23 Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim
24 upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure
25 8(a) provides: "A pleading that states a claim for relief must contain . . . a short and plain
26 statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).
27 Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal
28 theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police*

*Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To sufficiently state a claim for relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see, e.g., Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) ("Plaintiffs' general statement that Wal-Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity. We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss."). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

The elements of a claim for contributory infringement are (1) selling a device capable of infringing the patent which is not "suitable for substantial non-infringing use," (2) with knowledge that the infringing device was "especially adapted for use in an infringement of such patent," and (3) actual infringement by another. *See* 35 U.S.C. § 271(c); *Golden Blount v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363 (Fed. Cir. 2006). Pursuant to 35 U.S. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." "To establish liability under section 271(b), a patent holder must prove that once the defendants knew of the patent, they actively and knowingly aided and abetted another's direct infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006). "[A]dvertising an infringing use or instructing how to engage in an infringing use, show an

1  affirmative intent that the product be used to infringe" and can constitute actively aiding
2  another's infringement. *Id.* (citing *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936
3  (2005)). "[A] showing that infringement was encouraged overcomes the law's reluctance to
4  find liability when a defendant merely sells a commercial product suitable for some lawful
5  use." *Grokster*, 545 U.S. at 936.

6  AntiCancer has not pled any facts which would establish that the devices at issue are
7  not "suitable for substantial non-infringing use." Therefore, the Court must determine whether
8  AntiCancer has stated a claim for inducement of infringement.

9  The Court may take judicial notice of documents which were attached to the FAC. *See*
10 *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold*, 524 F.3d 1090,
11 1096 (9th Cir. 2008). However, the Court cannot take judicial notice of the Preliminary
12 Infringement Contentions because that document was not referenced in the FAC and because
13 the facts contained therein are subject to dispute. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 955
14 (9th Cir. 2009).

15 AntiCancer makes detailed factual allegations about the patents and about its
16 negotiations with Fujifilm over licensing. *See* Doc. # 44 at 1-8. AntiCancer has alleged
17 Fujifilm knew of AntiCancer's patents. *Id.* at 8. AntiCancer alleged it had discussions with
18 Fujifilm and demonstrated the products' capability of infringing the patent to potential
19 customers in conjunction with Fujifilm during licensing negotiations. *Id.* at 8. Although it
20 is not clear whether GE learned about those negotiations, GE began selling the allegedly
21 infringing devices three and a half months after AntiCancer had filed suit against Fujifilm in
22 this Court. *See id.* at 10 (GE began selling the devices October 1, 2009), Doc. # 1 (Complaint
23 filed June 17, 2009). AntiCancer has alleged GE advertises the infringing use and instructs its
24 customers on how to use the patent to infringe. (Doc. # 44 at 10). AntiCancer attached
25 marketing materials which show that GE's device replaced the LAS-4000, the device which
26 Fujifilm used to demonstrate AntiCancer's patented tumor fluorescence and detection method.
27 (Doc. # 44-2). The marketing materials from GE for the replacement device state the device
28 "can be upgraded with . . . RGB fluorescence . . . ." (Doc. # 44-3 at 33). AntiCancer's

allegation that GE continued Fujifilm's advertising campaign which allegedly promotes infringing use supports AntiCancer's assertion that users of the device are in fact infringing the patents. The Court concludes AntiCancer has adequately alleged that GE is advertising infringing uses and GE's customers are engaging in these infringing uses.

Therefore, the Court concludes that AntiCancer has not adequately alleged a claim for contributory infringement but AntiCancer has adequately alleged a claim for inducement of infringement. GE's motion to dismiss is denied.

## CONCLUSION

IT IS HEREBY ORDERED that GE Healthcare, Inc.'s Motion to Dismiss (Doc. # 45) is **DENIED**.

DATED: September 30, 2010

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge