1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| ANTICANCER, INC., a California corporation,<br><br>                                    Plaintiff,<br><br>        vs.<br><br>FUJIFILM MEDICAL SYSTEMS U.S.A., INC., d/b/a FUJIFILM LIFE SCIENCE, a New York corporation; et al.,<br><br>                                    Defendants. | CASE NO. 09-cv-1311-GPC(JMA)<br><br>**ORDER GRANTING DEFENDANTS MOTION FOR SUMMARY JUDGMENT**<br><br>[DKT. NO. 101] |

11
12
13
14
15
16
17
18
19
20

        The matter before the Court is Defendants Fujifilm Medical Systems U.S.A., Inc., Fujifilm Corporation (collectively, "Fujifilm"), and GE Healthcare Inc.'s ("GE," together "Defendants") motion for summary judgment of non-infringement (Dkt. No. 101.)

21
22
23

**PROCEDURAL HISTORY**

24

        This is a lawsuit for patent infringement of imaging and cancer research technologies.  On June 17, 2009, Plaintiff AntiCancer, Inc. ("AntiCancer" or "Plaintiff") filed a Complaint asserting violations of three patents. (Dkt. No. 1.) On August 20, 2009, AntiCancer filed its first amended complaint and on November 16, 2009, AntiCancer filed its second amended complaint. (Dkt. Nos. 6, 22.)  After

25
26
27
28

1   the Court struck the second amended complaint due to failure to obtain leave to file,

2   Plaintiffs filed its second amended complaint again, which is now the operative

3   pleading in this case.  (Dkt. No. 44, Second Amended Complaint, hereinafter

4   "SAC".)  On April 29, 2010, Defendant GE filed a motion to dismiss. (Dkt. No. 45.)

5   The Court denied GE's motion to dismiss, finding that "AntiCancer has not

6   adequately alleged a claim for contributory infringement but AntiCancer has

7   adequately alleged a claim for inducement of infringement." (Dkt. No. 53.)  On

8   October 31, 2011, the parties filed a revised joint claim construction hearing

9   statement and construction chart, coming to full agreement on all terms. (Dkt. No.

10  91.)  On September 12, 2012, Defendants Fujifilm and GE filed a motion for

11  summary judgment of non-infringement. (Dkt. No. 101.)  On October 5, 2012,

12  Plaintiff AntiCancer filed an opposition to Defendants' motion for summary

13  judgement. (Dkt. No. 105.)  On October 19, 2012, Defendants filed a reply. (Dkt.

14  No. 110.)  A hearing was held on the motion on March 8, 2013.  For the reasons

15  below, the Court **GRANTS** Defendants motion for summary judgment.

16                              **BACKGROUND**

17         AntiCancer alleges that it holds patents for techniques which allow

18  researchers to track metastasis of tumor cells in live lab animals through the use of

19  fluorescent proteins, including green fluorescent protein ("GFP"), a protein which

20  occurs naturally in a species of jellyfish; do whole-body external optical imaging of

21  gene expression in live animals; and evaluate candidate protocols or drugs for

22  treating disease using fluorophores, i.e., proteins which self-fluoresce. (Dkt. No. 44

23  at 1.)  AntiCancer engineers tumor cells encoded with GFP and other fluorophores

24  which glow when exposed to blue light. Id.  AntiCancer then injects the tumor cells

25  into animals which allows scientists to monitor the tumors' "growth and spread in

26  the living animal...by fluorescence imaging." Id. at 1-2.  This allows researchers to

27  test the efficacy of cancer treatments. Id. at 2.

28

1    AntiCancer identifies three patents at issue in this case.[1]  First, the '384

2  claims methods for "a real-time model of tumor invasion and metasasis formation.

3  The method enables testing of candidate protocols or drugs in animal models before

4  they are tried in the clinic." Id. at 5.  One of the key terms in the patent is green

5  fluorescent protein, or "GFP."  The '384 patent claims a method for testing cancer

6  drugs by administering them to mammals with primary tumors which "express" the

7  GFP when the cancer metastasis and monitoring the progress of the metastasises via

8  fluorescence optical tumor imaging. Id.  The patent also covers a process of

9  removing organ tissue samples containing GFP-expressing cancer cells and

10  examining them under a fluorescence microscope. Id.

11    The '038 patent is a method of monitoring the growth of tumor cells in live

12  animals via the expression of green fluorescent protein that express when the tumor

13  metastasizes.  According to the Joint Claim chart, Claim 1 of the '038 patent is "a

14  method to evaluate a candidate protocol or drug for the inhibition of metastasis of a

15  primary tumor which method comprises administering said protocol or drug to a

16  subject which is a mouse, rat or rabbit which contains a primary tumor that stably

17  expresses green fluorescent protein (GFP) in cells of said tumor." (Dkt. No. 91,

18  Revised Claim Construction Worksheet, October 31, 2011 at 6.)  Claim 1 also

19  requires monitoring of the fluorescence in treated and controlled subjects. (Id. at 7-

20  8.)  In short, the patent method requires the injection of a tumor with the GFP into a

21  small live animal, which is then monitored to determine the growth of the tumor by

22  the expression of the GFP.  The additional claims under the '038 patent similarly

23  require monitoring the progression of the metastasis using GFP.  (Id. at 9-10.)

24    The '159 patent claim method is used to monitor the ability of a promoter

25

26    [1]In its' disclosure of asserted claims and preliminary infringement contentions, AntiCancer
27  states that "AntiCancer is holding in abeyance any of its previously-asserted second claim for relief
(for infringement of U.S. Patent No. 6,251,384).  Promptly AntiCancer will duly take the steps
necessary to effect a voluntary dismissal of that claim without prejudice."  The Court notes that
28  AntiCancer has failed to take such action and none of its' subsequent pleadings address the '384
patent.  See Dkt. No. 49, Plaintiff's Markman Brief (addressing only Patents '038 and '159).

1   (i.e., a genetic segment that acts as the 'on/off switch' for the expression of that

2   gene) to promote expression in an animal of a gene that is controlled by the said

3   promoter. (Id. at 1.) The claim also includes delivering cells containing nucleic acid

4   with fluorophore and observing the presence of the fluorescence generated by the

5   fluorophore. (Id. at 2-3.)  Claim 5 expands claim 1 to include green, blue and red

6   fluorescent proteins. (Id. at 4.)  Additional claims also expand upon claim 1 to

7   include a variety of tissues, organs and animals. (Id. at 4-6.)

8        AntiCancer bases Defendant Fufifilm's wrongful conduct on a series of

9   emails and interactions regarding specific Fujifilm products that have the capability

10   to conduct similar imaging technologies patented by AntiCancer. (Dkt. No. 44,

11   SAC.)  On May 30, 2007, an employee of Fujifilm, Stephanie Pappas and the

12   president of AntiCancer, Robert Hoffman, met to discuss "in-vivo imaging of small

13   animals."  During the meeting, they discussed Fujifilm's new LAS-4000 multi color

14   fluoresecence imaging system which is "one of the industry's fastest and most

15   sensitive imaging systems" for "imaging of tumor cells and gene expression in live

16   laboratory animals using GFP." Id.  Ms. Pappas informed Dr. Hoffman that she

17   would begin to have the two companies work together, and seek to have Fujifilm

18   obtain a license from AntiCancer to market the LAS-4000 for in-vivo imaging.  Id.

19   One month later, Ms. Pappas informed Dr. Hoffman that Fujifilm was releasing the

20   LAS-4000, but that Fiujifilm was unable to advertise the LAS-4000 for "GFP-based

21   in vivo imaging because of 'patents' and 'lawsuits'." Id.  On September 13, 2007

22   Fuijifilm conducted a demo of the LAS-4000 at AntiCancer's facilities. Id. at 8.  In

23   December, Fujifilm conducted a "mini product show" where the LAS-4000 was also

24   demonstrated.  AntiCancer never heard back from Fujifilm about obtaining a

25   license, and claims that "Fujifilm used the information obtained from AntiCancer

26   under the pretense of seeking a collaboration with AntiCancer for the sole purpose

27   of gaining an advantage in the marketing of its LAS-4000 for GFP-based in vivo

28   imaging, and had no intention of a collaboration with AntiCancer at all."  Id.

In May 2008, Fujifilm published "Application Note No. 6," entitled In Vivo Imaging of Tumor-Bearing Nude Mouse with DY-676 Labeled Monoclonal Antibody Using Near-Infrared Light. Id. "This paper proved both the suitability of the LAS-4000 for performing the methods claimed in several claims of the patents-in-suit and Fujifilm's attempt to induce actual and potential customers to use the LAS-4000 for that very purpose." Id. AntiCancer accuses Fujifilm of marketing the LAS-4000 for sale in the United States. Its marketing materials lists the "proper filter and reagents to use for imaging with GFP...and contain a general, boilerplate notice to its customers regarding use of the LAS-4000 an potential patent liability." Another advertisement states that the LAS-4000 can do fluorescent imaging as well as "small animal in vivo imaging." Fujifilm continues to market and sell the LAS-4000 in the United States. In addition to the LAS-4000, AntiCancer believes additional products also violate their patents, including the LAS-1000plus, LAS-3000 luminescent image analyzer, FLA-5100 fluorescent image analyzer, and FLA-8000 fluorescent image analyzer, as well as the "mini" versions of each of the LAS-labeled devices. Id. at 9. "It provides its customers with detailed user manuals which provide filter settings and lens configurations necessary to use Fujifilm image analyzers to do fluorescent imaging. In so doing, Fujifilm actively has induced and...will continue to induce infringement of AntiCancer's patents by knowingly causing its customers to infring those patents directly by using the Fujifilm image analyzers to perform methods claimed in those patents." Id.

On May 26, 2009, Fujifilm and GE Healthcare announced the formation of a strategic alliance in which Fujifilm sells to GE Healthcare image analyzers to be re-sold by GE Healthcare. Id. On October 1, 2009, GE Healthcare began offering for sale a line of imaging products "capable of infringing the patents-in-suit." Id. The "products equivalent" to the LAS-4000 and LAS-4000 mini, GE's products, the "ImageQuant LAS 400 and Image Quant LAS 4000 mini," allegedly infringe the patents-in-suit. Id. AntiCancer asserts that both Fujifilm and GE Healthcare have

1  directly infringed on the patents-in-suit and contributorily and/or induced

2  infringement of the patents-in-suit.

3       In the motion for summary judgement on non-infringement, Defendants

4  Fujifilm and GE assert that the AntiCancer has failed to prove contributory

5  infringement against Fujifilm for the same reasons that the Court granted GE's

6  motion to dismiss.  (See Dkt. No. 53.)  Defendants further assert that AntiCancer

7  has failed to produce evidence of direct infringement or evidence that Defendants

8  knowingly induced conduct that would infringe the patents-in-suit.  Lastly,

9  Defendants argue that AntiCancer has not offered any support of its claims based on

10  the '384 patent or with respect to certain Fujifilm products.

11                          **LEGAL STANDARD**

12       Summary judgment is appropriate where the moving party demonstrates the

13  absence of a genuine issue of material fact and entitlement to judgment as a matter

14  of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A

15  fact is material when, under the governing substantive law, it could affect the

16  outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

17  (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute about a

18  material fact is genuine if "the evidence is such that a reasonable jury could return a

19  verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

20       A party seeking summary judgment always bears the initial burden of

21  establishing the absence of a genuine issue of material fact.  See Celotex, 477 U.S.

22  at 323.  The moving party may satisfy this burden in two ways: (1) by presenting

23  evidence that negates an essential element of the nonmoving party's case, or (2) by

24  demonstrating that the nonmoving party failed to make a showing sufficient to

25  establish an element essential to that party's case on which that party will bear the

26  burden of proof at trial.  Id. at 322-23.

27       Where the party moving for summary judgment does not bear the burden of

28  proof at trial, it may show that no genuine issue of material fact exists by

demonstrating "there is an absence of evidence to support the non-moving party's case." Id. at 325.  The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the moving party's claim.  Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885 (1990); United Steelworkers v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989).  "Rather, the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule 56(c), is satisfied."  Lujan, 497 U.S. at 885 (quoting Celotex, 477 U.S. at 323).  If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.").  Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (internal quotations omitted).

"Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  "The district court may limit its review to the documents submitted for purpose of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001).  Therefore, the court need not "scour the record in search of a genuine issue of triable fact." Keenan v. Allen, 91 F.3d 1275,

1279 (9th Cir. 1996) (citing Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)).

## DISCUSSION

Defendants assert that AntiCancer has only asserted a claim for induced infringement of the patent claims because "it is undisputed that neither Fujifilm nor GE Healthcare practice all limitations of any of the asserted claims of AntiCancer's patents." (Dkt. No. 101 at 5.)  Defendants also rely on a previous Court order denying GE's motion to dismiss wherein the Court found that AntiCancer failed to establish that the accused devices are not "suitable for substantial non-infringing use." (Dkt. No. 53 at 8.)  While Defendants raise valid concerns, the Court will address AntiCancer's claim of direct infringement in addition to the claims of contributory and induced infringement. AntiCancer's first cause of action alleges that "defendants have infringed the '038 patent by making, using, selling, and offering for sale the Fujifilm and/or GE Healthcare image analyzers which can and are be[ing] used to infringe one or more claims...without plaintiff's authorization or consent." (SAC at 11.)  This is clearly a claim for direct infringement. 35 U.S.C. § 271 (a)("whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.")  AntiCancer also alleges violations under 35 U.S.C. § 271 (b-c) by stating that "defendants are actively inducing and/or contributing to infringement of the... patent by others." (Id.)  The Court notes that patent law requires that a patent holder establish acts of direct infringement before liability for inducement or contributory infringement can be found. Akamai Techs., Inc. v. Limelight Networks, Inc., 692 F.3d 1301, 1308 (Fed. Cir. 2012) ("An important limitation on the scope of induced infringement is that inducement gives rise to liability only if the inducement leads to actual infringement.")(internal citations omitted).  Accordingly, the Court will address direct infringement prior to reviewing the inducement or contributory infringement

1    claims.

2    **A. Direct Infringement**

3           Direct infringement of a method claim can be based on even one instance of

4    the claimed method being performed.  See Lucent Techs., Inc. V. Gateway, Inc.,

5    580 F.2d 1301, 1317 (Fed. Cir. 2009).  A patentee need not always have direct

6    evidence of infringement, as infringement may be established by circumstantial

7    evidence.  Mirror Worlds LLC v. Apple Inc., 692 F.3d 1351, 1359 (2012) (citing

8    Lucent, 580 F.3d at 1317.)  However, the patentee must show that the Defendant

9    performed all of the steps in the claimed methods.  Id. Here, AntiCancer has failed

10   to provide sufficient evidence to show that Fujifilm or GE directly infringed the

11   patent method claims.

12          In its' opposition briefing, AntiCancer relies on two direct instances and

13   circumstantial evidence to support its' direct infringement claim.  In the first

14   instance, AntiCancer asserts that Fujifilm employee Ms. Pappas performed a

15   demonstration of the LAS-4000 at the AntiCancer facility, which resulted in a direct

16   infringement of the patents. (Dkt. No. 105 at 4.)  "It was apparent at that time that

17   the LAS-4000 was capable of fluorescence imaging with GFP, and in fact produced

18   a very good result.  Thus, Ms. Pappas used the LAS to perform AntiCancer's

19   patents in order to attempt to sell the machine to AntiCancer, and thereby directly

20   infringed the patents-in-suit."  (Dkt. No. 105, Ex. 1, Declaration of Robert M.

21   Hoffman at ¶ 6, hereinafter "Hoffman Declaration".)  The second alleged direct

22   infringement took place at a Mini-Product Show at AntiCancer's facility whereby

23   Fujifilm demonstrated the LAS-4000 to several potential customers for its ability to

24   perform in vivo GFP imaging." (Id. at ¶ 7.)  AntiCancer also points towards

25   Fujifilm's marketing and advertisement of the LAS-4000 as circumstantial evidence

26   that Fujifilm directly infringed on the AntiCancer patents. (Id. ¶¶ 8-12.)  Nowhere in

27   the record, however, has AntiCancer provided specific information as to how Ms.

28   Pappas performed some or all of the steps in the patent claimed methods.

1        Although the record reflects little evidence to support a direct infringement

2   claim, the Court considers whether the LAS-4000 demonstrations performed by

3   Fujifilm employee Ms. Pappas are sufficient to show the elements of a direct

4   infringement claim.  Direct patent infringement occurs under 35 U.S.C. § 271(a)

5   when someone "(1) without authority (2) makes, uses, offers to sell, sells, or imports

6   (3) the patented invention (4) within the United States, its territories, or its

7   possessions (5) during the term of the patent." Herbert F. Schwartz & Robert J.

8   Goldman, Patent Law and Practice 163–64 (6th ed.2008); <u>see also</u> <u>Global–Tech</u>

9   <u>Appliances, Inc. v. SEB S.A.</u>, 131 S.Ct. 2060, 2065 (2011) ("Direct infringement

10  has long been understood to require no more than the unauthorized use of a patented

11  invention.").  Determining whether someone is making, using, or selling a patented

12  invention "requires a finding that the patent claim covers the alleged infringer's

13  product or process."  <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370, 374

14  (1996) (internal quotation marks omitted).

15       Defendants first assert that AntiCancer's previous admittance that it has no

16  evidence to support a direct infringement claim bars AntiCancer from raising the

17  issue now on a motion for summary judgment.  In its responses to interrogatories,

18  Defendants point out, AntiCancer "makes no mention whatsoever of the two

19  demonstrations that it now relies on to resist summary judgement." (Dkt. No. 110 at

20  5.)  The Court views this omission as a fatal failure.  AntiCancer failed to plead any

21  facts whatsoever after both demonstrations had already been disclosed as

22  allegations in the operative complaint filed in April 2010.  AntiCancer's failure to

23  restate these facts or provide additional evidence over two years later in response to

24  Defendant's interrogatories is of serious consequence.  (Dkt. No. 110 at 5-6.)  The

25  glaring omission of any supportive facts leads the Court to believe that there is no

26  evidence to support the direct infringement claim.

27       Defendants further contend that Mr. Hoffman's declaration supporting the

28  direct infringement claim is conclusory, and were the Court to rely on his statement,

1    that there is no evidence of direct infringement because the demonstrations were

2    performed at the AntiCancer facility, with AntiCancer's permission. The Court

3    agrees.  In addition to a lack of supportive evidence, the record shows that

4    AntiCancer authorized Ms. Pappas to perform the first demonstration at

5    AntiCancer's facility.  Mr. Hoffman states that "Ms. Pappas requested to perform a

6    demo of the LAS-4000 at AntiCancer's facility, and AntiCancer agreed." (Hoffman

7    Declaration at ¶ 6.)  In her oral deposition, Ms. Pappas confirmed that AntiCancer

8    agreed to the demonstration, stating that "[Dr. Hoffman] wanted to see how [the

9    LAS-4000] could analyze his mice....he [sic] wanted to have a demo, said that he

10   wanted to buy an instrument for his personal use, maybe his researchers would be

11   interested...and he kept saying, 'Don't worry. Don't worry. I own the rights for

12   doing this application. I'm allowed to do this application on anything.'" ( Dkt. No.

13   110, Ex. A, Oral Deposition of Stephanie Pappas at 184:13-18; hereinafter "Pappas

14   Deposition.")  There was also "pressure coming from AntiCancer to have a demo,"

15   even after Ms. Pappas had informed Dr. Hoffman that Fujifilm was not interested in

16   co-marketing program. (Id. at 183-184.) Once Ms. Pappas set up the instrument at

17   the AntiCancer facility, she "showed [Dr. Hoffman and other lab technicians] how

18   to use the instrument...at one point Dr. Hoffman came in to see the demo. He was

19   interested in seeing the speed of the instrument and how quickly it could image

20   these tumors." (Id. at 186.)  Combined, Dr. Hoffman's declaration and Ms. Pappas'

21   deposition testimony clearly indicate that AntiCancer authorized Ms. Pappas to

22   bring the Fujifilm instrument onto their facilities for the purpose of performing

23   certain imaging techniques. Accordingly, AntiCancer has failed to show any

24   evidence that someone "without authority" infringed the patent, a necessary element

25   of a direct infringement claim.

26        Furthermore, AntiCancer has failed to plead any facts to support the finding

27   that Ms. Pappas performed all the steps in any of the patent claimed processes.  Dr.

28   Hoffman's declaration states in a conclusory fashion that "Ms. Pappas used the LAS

to perform AntiCancer's patents in order to attempt to sell the machine to AntiCancer, and thereby directly infringed the patents-in-suit." (Hoffman Declaration at ¶ 6.)  As stated above, the patent claims processes are detailed research procedures for tracking the growth of tumor cells in live small animals. AntiCancer has failed to provide the Court any further evidence that Ms. Pappas, during any of the demonstrations or otherwise, performed the steps required in these research processes.  Therefore, AntiCancer has also failed to provide any facts to support the finding that the process used by Ms. Pappas in demonstrating the Fujifilm LAS instrument was covered by AntiCancer's patent claims.

The second alleged demonstration by Ms. Pappas also fails to provide any evidence to support a finding of direct infringement.  According to Dr. Hoffman's declaration, Ms. Pappas demonstrated the LAS-4000 to potential customers at a Mini-Product Show for its ability to perform *in vivo* GFP imaging. (Hoffman Declaration at ¶ 7.)  In her deposition, Ms. Pappas contests the allegation that she ever demonstrated a Fujifilm instrument at the Mini-Product Show.  "I would never set up a model at one of these shows...because there would be no reason to bring a model into these shows...they were just a schmoozing kind of thing to pass out literature."  And when asked if Ms. Pappas brought an LAS instrument to the Mini-Show referenced by Dr. Hoffman, Ms. Pappas responded, "Absolutely not." (Pappas Deposition at 71, 77-78, 194.)  While there is a factual dispute regarding whether Ms. Pappas demonstrated one of the Fujifilm instruments at the Mini-Product Show, the record is still void of any facts to support the claim that Ms. Pappas was not authorized to bring in the instrument to the AntiCancer facility for the show, or that Ms. Pappas performed any of the steps in the AntiCancer claims process.  As such, the second allegation also fails to show any evidence to support a finding of a direct infringement violation.

Finally, AntiCancer's circumstantial evidence fails to provide sufficient facts to meet the standard for a direct infringement claim.  Dr. Hoffman's statement

identifies a series of marketing materials which he asserts proves that the LAS-4000 has the capability to infringe AntiCancer's patents, and therefore provides evidence that Fujifilm has directly infringed the patent claims.  Dr. Hoffman first cites the "Application Note No. 6," entitled "In Vivo Imaging of Tumor-Bearing Nude Mouse with DY-676 Labeled Monoclonal Antibody Using Near-Infrared Light." (Hoffman Declaration at ¶ 8.)  Regarding this Note, Fujifilm states that the note was published as a report "on a study that Fujifilm Corporation performed in Japan in collaboration with Perseus Proteomics, Inc. that involved the in vivo imaging of a tumor cell that had been labeled with an antibody.  Application Note 26 does not address the use of the LAS-4000 for performing in vivo imaging of a tumor cell labeled modified with fluorescent protein." (Dkt. No. 1-1, Ex. 22, Declaration of Fujifilm employee Toshio Yamada, hereinafter "Yamada Declaration," at ¶13.) Dr. Hoffman also points to general marketing brochures that list the filters and reagents for imaging with GFP, and notes that the brochures advises customers that they should consult with a lawyer regarding licenses from third parties.  (Id. at ¶ 9.) Fujifilm confirms that the disclaimer "direct[ed] potential users to consult with a lawyer or patent attorney regarding third-party patents, particularly regarding sample preparation.  A warning was added to advertising and sales brochures because Fujifilm was careful to respect the intellectual property rights of others." (Yamada Declaration at ¶12.)  A different advertisement announces the ability of the LAS-4000 to do fluorescence imaging with "small animal *in vivo* imaging," with availability from a variety of fluorescent coloring, including green.  The ad states "small animal *in vivo* imaging...the LAS-4000 provides a powerful tool for *in vivo* imaging." (Hoffman Declaration at ¶ 9.)  This particular advertisement markets a variety of LED illumination from UV, including green, for imaging fluorescent labels. (Id.) Dr. Hoffman also points to Fujifilm's marketing of the "*In Vivo* Imaging Accessory Kit for Small Animal Imaging," as circumstantial evidence that Fujifilm has directly infringed the patent claims.  Fujifilm confirms that "[t]o facilitate live

1   animal imaging, Fujifilm developed and began to market the LAS in vivo Assist

2   Kit...which included a heated stage to keep the animal warm and a means to sedate

3   the animal...in order to use the LAS-4000 for in vivo imaging using GFP or other

4   fluorescent proteins, additional components would be necessary on top of the

5   machine itself and in vivo Assist Kit." (Yamada Declaration at ¶10.)

6          These marketing materials are at best circumstantial evidence that the LAS-

7   4000 has the capability to conduct AntiCancer's patent process.  The materials say

8   nothing, however, about whether somebody at Fujifilm or a customer of Fujifilm

9   used AntiCancer's patent method claim processes.  Thus, the marketing materials do

10  not provide a reasonable jury adequate grounds on which to find direct infringement

11  by Fujifilm. See Mirror Worlds, LLC v. Apple Inc., 692 F.3d 1351, 1359 (testimony

12  confirming that an accused product functioned in a specific way that could infringe

13  upon the patent was insufficient evidence to support a reasonable jury finding direct

14  infringement.)

15         In sum, the Court finds that AntiCancer has failed to provide substantial

16  evidence to support a finding of direct infringement by Fujifilm of the '038 and

17  '159 patent claims.

18  **B. Induced Infringement**

19         In addition to alleging direct infringement by Fujifilm and GE, AntiCancer

20  also alleges that Fujifilm induced its customers to infringe the patent claims.  The

21  Patent Act provides that a party who "actively induces infringement of a patent shall

22  be liable as an infringer."  35 U.S.C. § 271 (b).  Inducement of infringement

23  requires that there be a showing of an underlying act of direct infringement.  Linear

24  Tech. Corp. v. Impala Linear Corp., 379 F. 3d 1311, 1326 (Fed. Cir. 2004).

25  Liability for induced infringement requires (1) proof of direct infringement and (2)

26  the patentee shows that defendant knew of the patent and induced others to perform

27  some or all of steps of the methods claimed in the patent.  Akamai Techs., Inc. 692

28  F.3d at 1311, 1318. The Supreme Court also recently confirmed that the accused

1  inducer must know that the third party conduct it induced constituted infringement.

2  Global–Tech Appliances, Inc., 131 S.Ct. at 2068.

3        Here, AntiCancer relies on the marketing materials detailed above to support

4  a claim for induced infringement.  AntiCancer submits that together these materials

5  show that Fujifilm has actively induced third parties to violate the methods claimed

6  in the patents: Fujifilm produced and distributed "Application Note No. 6",

7  advertised that the LAS-4000 has the proper filter and reagents for GFP imaging,

8  marketed one specific advertisement that announces the ability of the LAS-4000 to

9  conduct *in vivo* imaging, and created and advertised the In Vivo Kit which gives the

10  LAS-4000 the ability to perform live animal imaging. (Dkt. No. 105 at 4-5; See also

11  Hoffman Declaration ¶¶ 8-11.)  As previously found by the Court, these facts are

12  insufficient evidence to support a claim for direct infringement.  Having failed to

13  provide any additional information showing that Fujifilm or GE used AntiCancer's

14  methods claimed in the patents, AntiCancer has failed to provide proof of direct

15  infringement - an element necessary to sustain a claim for induced infringement.

16  Accordingly, the Court finds that AntiCancer has failed to make a showing

17  sufficient to establish the existence of each element essential to its case.

18        Even if the Court were to find some evidence of infringing acts, the

19  marketing materials are insufficient evidence to support the finding that the

20  materials induced others to perform some or all of the steps of AntiCancer's method

21  claims.  In E-Pass Technologies, the Federal Circuit found that evidence that

22  competitors' manuals taught their customers each step of the claimed method in

23  isolation did not prove that customers actually performed the claimed patented

24  method.  E-Pass Technologies, Inc. v. 3Com Corp, 473 F.3d 1213, 1221 (Fed. Cir.

25  2007).  This was especially the case when the accused product could be used for a

26  variety of purposes and in a variety of ways, where manual excerpts did not teach all

27  steps of the claimed method together, and the patent assignee otherwise did not

28  introduce evidence of even one customer who practiced steps of claimed method in

1   required order. Id.  Similar to E-Pass Technologies, AntiCancer relies on

2   advertisements, an application note, and the availability of a kit that could support

3   infringing acts, without providing evidence that these materials were used to induce

4   acts that would violate the methods in the patent claims.  In addition, the record

5   shows that the LAS-4000 device has multiple uses, and that Fujifilm made efforts to

6   ensure that it was not inducing customers to violate patents. (Pappas Deposition at

7   40; Yamada Declaration at ¶¶ 10-12.)  Under these facts, the Court concludes that

8   there is a lack of substantial evidence on which a jury could render a verdict for

9   inducement of infringement.  As such, there is insufficient evidence for induced

10  infringement of the '038 and '159 patent claims.

11  **C. Contributory Infringement**

12          As the Court previously held, AntiCancer has not pled any facts to support

13  the finding that the Fujifilm instruments are not suitable for substantial non-

14  infringing use.  Patent law proves that whoever sells an apparatus for use in

15  practicing a patented method, knowing it to be "especially made or especially

16  adapted for use in an infringement of such patent, and not a staple article or

17  commodity of commerce suitable for substantial non-infringing use, shall be liable

18  as a contributory infringer."  35 U.S.C. § 271(c).  "District courts have found...that

19  non-infringing uses are substantial when they are not unusual, far-fetched, illusory,

20  impractical, occasional, aberrant, or experimental."  Vita-Mix Corp. V. Basic

21  Holding, Inc. 581 F.3d 1317, 1327 (Fed. Cir. 2009)(internal citations omitted).  It is

22  undisputed that the accused products are capable of non-infringing use.  The

23  question then turns on whether the non-infringing use is substantial, an element

24  which AntiCancer has not provided any supporting evidence.  The Court previously

25  held that there was insufficient evidence to support a claim for contributory

26  infringement. (Dkt. No. 53 at 8, Order Denying GE's Motion to Dismiss,

27  "AntiCancer has not pled any facts which would establish that the devices at issue

28  are 'not suitable for substantial non-infringing use.'")  No additional or new

evidence has been provided to support the finding that the accused products had substantial, non-infringing use.  Given the continued lack of evidence supporting the claim for contributory infringement, the Court finds that a reasonable jury would be unable to make a finding in support of AntiCancer's contributory infringement claim.

**D. The '384 Patent**

AntiCancer's second amended complaint includes a claim for violation of the '384 patent.  The record since the second amended complaint, however, is void of any factual or circumstantial evidence regarding the '384 patent.  AntiCancer even failed to disclose the '384 patent claims in the preliminary infringement contentions.  Without setting forth the infringement theory, and the discovery period having ended, the Court thereby grants summary judgement in favor defendants on the '384 patent violation claim.  See Pat. LR 3.1(c).

## CONCLUSION

For the foregoing reasons, it is hereby ordered the Defendants Fujifilm and GE Healthcare, Inc.'s Motion for Summary Judgment is **GRANTED**. Accordingly, the Court **DISMISSES WITH PREJUDICE** all claims in the Second Amended Complaint and the Court enters summary judgment of non-infringement in favor of Defendants Fujifilm and GE Healthcare.  This judgment disposes of this action in its entirety as to all causes of action.  The clerk shall enter judgment accordingly.

**SO ORDERED.**

DATED:  March 11, 2013

HON. GONZALO P. CURIEL
United States District Judge